IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

Douglas Lamont Rice, # 319577,       )
                                     )
                                     )       Civil Action No. 6:14-3748-RMG-KFM
                    Petitioner,      )
                                     )       **REPORT OF MAGISTRATE JUDGE**
        vs.                          )
                                     )
Warden Leroy Cartledge,              )
                                     )
                                     )
                    Respondent.      )
_____ )

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

## BACKGROUND

The petitioner is currently incarcerated at the McCormick Correctional Institution of the South Carolina Department of Corrections. The petitioner was indicted by the Anderson County Grand Jury in June 2006 for trafficking cocaine (No. 2006-GS-04-0704) (app. 243–44).[1] The petitioner was represented by Charles Griffin. On December 13, 2006, the petitioner and his co-defendant, Antran Ledriqueko Hall, received a joint jury trial, *in absentia*, before the Honorable G. Edward Welmaker, South Carolina

---

[1]In the return, the respondent notes that pages 40, 97–98, 121–24, 128–29, and 238–39 of the appendix to the petition for writ of certiorari contain extraneous, handwritten markings that were not made by respondent's counsel. Therefore, the respondent attached clean copies of the pages to the return (doc. 22–6).

Circuit Judge.  The jury convicted the petitioner, as charged, and Judge Welmaker imposed a sealed sentence (app. 1–155).  The petitioner was subsequently apprehended.  On January 16, 2007, the petitioner, with Mr. Griffin representing him, appeared before the Honorable J. Cordell Maddox, South Carolina Circuit Judge.  Judge Maddox opened the previously-sealed sentence (issued by Judge Welmaker), which sentenced the petitioner to twenty-five years in prison (app. 158–62, 245).

### *Underlying Case Facts*

The following evidence was presented at the petitioner's trial *in absentia*.  In November 2005, Anderson County Sheriff's Department officers began surveillance of an Anderson County residence.  They witnessed suspected drug activity, such as cars coming and going throughout the evenings.  They also had information from a confidential informant that Antran Ledriqueko Hall was selling drugs from the residence and that Hall drove an early 1990s Buick that officers had seen at the residence, which was a trailer.

On November 21, 2005, officers executed a search warrant for the trailer.  Neither Hall nor the petitioner was at home, and the only person present was a black female (app. 43–49, 63–64, 77–78).  During the search, officers seized a Smith & Wesson .357 caliber revolver; a "yellow bag containing miscellaneous shotgun shells and bullets"; a "black magazine to a handgun[;] a white bag containing miscellaneous rifle cartridges and rounds[;] [t]hree boxes of ammo[;]… [and] a box of sandwich bags."  Officers also found a power bill addressed to Hall and photographs of him, a scanner, five sets of digital scales, and a 9 mm. pistol.  They found a motorcycle outside of the trailer.  Officers subsequently learned that this motorcycle had been stolen out of Buncombe County, North Carolina (app. 49–55).  They did not find any drugs in the residence (app. 58).

As the officers were finishing their search outside, Hall's Buick drove down the road and approached the trailer.  The officers outside were dressed in pullovers with the word "Sheriff" on them.  As the car came down the hill, it "hesitated for a moment.  The

2

vehicle started to slow and then it accelerated rapidly away from the house." Several officers, including Sgt. Brad Baxter, left the residence and tried to find the Buick (app. 55–58, 64–65, 78). According to Sgt. Baxter, he and several officers ran to his truck and drove to Highway 28 when they saw Hall driving on a road nearby. Sgt. Baxter engaged his blue lights and siren and caught up to Hall, who started driving erratically, passing cars on the double yellow line, and speeding. During the chase, Sgt. Baxter and the other officers saw a bag fly out of the passenger side of the car. Another officer was called to pick up the bag, and the chase continued (app. 80–81, 85–86). Eventually, Hall ran the car into some bushes, and the motor stalled. Hall and the petitioner got out of the car and fled from officers. The petitioner was apprehended after a short foot chase and arrested (app. 65–68, 78–80, 90–94, 95–99).

A field test on the bag was positive for 263.5 grams of cocaine. Subsequently, the substance in the bag was analyzed by a chemist, who determined that it was actually 253.5 grams of cocaine. Sgt. Baxter testified the street value of that amount of cocaine was between $10,000 and $15,000 (app. 70, 82–83, 101–09).

### Direct Appeal

The petitioner timely served and filed a Notice of Appeal. He was represented by Assistant Appellate Defender Kathrine H. Hudgins. On June 23, 2008, Ms. Hudgins filed a Final *Anders* Brief of Appellant on the petitioner's behalf and petitioned to be relieved as counsel (app. 163–74). The Final *Anders* Brief presented the following issues:

> 1. Did the trial judge err by proceeding with a trial *in absentia* when the State failed to produce evidence that the defendant had been given notice of his trial date?
>
> 2. Did the trial judge err by failing to declare a mistrial when the prosecutor in closing argument of a trial *in absentia* improperly commented on the defendant's right to remain silent?

(App. 166).

3

On October 8, 2009, the South Carolina Court of Appeals filed an opinion dismissing the appeal and granting counsel's petition to be relieved. *State v. Douglas Lamont Rice*, Opinion No. 2009-UP-454 (S.C. Ct.App. Oct. 8, 2009) (app. 175–76). The Remittitur was sent to the Anderson County Clerk of Court on October 26, 2009 (doc. 22-5).

**PCR**

The petitioner filed a *pro se* post–conviction relief ("PCR") application (2010-CP-04-2640) on July 27, 2010, wherein he alleged the following grounds:

1. Ineffective assistance of counsel:

a. For failing to object to the possession jury instruction to be preserved for appellate review in which the state failed to prove proof beyond reasonable doubt of knowingly and unlawfully have in his possession 200 grams or more but less than 400 grams of cocaine in which the Applicant was indicted on.

b. For failing to object to a trial in absentia when the court's fail to produce evidence that the Applicant had been given notice of his trial dates or not of term of court in which he must appear. Applicant never waived his rights not to attend his trial.

c. For failing to object to prosecutor misconduct in closing arguments prosecutor improperly commented on Applicant's post-arrest silence.

d. For failing to object to the hand of one hand of all jury charge, which was outside the scope of the indictment.

(App. 177–83). The State filed its Return on October 27, 2010 (app. 184–88).

On October 5, 2011, an evidentiary hearing was held by the Honorable J. Cordell Maddox.[2] The petitioner was present with counsel, Hugh W. Welborn. Assistant Attorney General Kaelon E. May represented the State. The petitioner testified on his own

---

[2] Although South Carolina case law provides that the trial judge should not be the judge assigned to the PCR case, *see Floyd v. State*, 400 S.E.2d 145, 146 (S.C. 1991) ("Accordingly, in all post-conviction relief hearings held after the date of this opinion, a judge shall, *upon motion*, recuse himself if he was the judge who presided at the guilty plea, criminal trial, or probation revocation proceeding for which relief is being sought."), Judge Maddox was not the trial judge, but merely opened the sealed sentence issued earlier by Judge Welmaker (app. 193).

4

behalf, while the State presented the testimony of the petitioner's trial counsel, Mr. Griffin (app. 189–225).

On January 5, 2012, Judge Maddox denied relief and dismissed the application *with prejudice* in an order of dismissal.  The order addressed the petitioner's claims that trial counsel was ineffective for (1)  failing to object to the "possession" jury instruction; (2)  failing to object to a trial *in absentia*; (3) failing to object to the Assistant Solicitor's comments on the petitioner's post-arrest silence in closing argument; and (4) failing to object to the "hand of one is the hand of all" jury instruction (app. 229–40).[3]

### PCR Appeal

The petitioner timely served and filed a notice of appeal.  Assistant Appellate Defender Dayne C. Phillips represented him in collateral appellate proceedings.  On June 20, 2012, the petitioner filed a petition for writ of certiorari, in which he presented the following issue:

> Did the PCR court err in finding that trial counsel provided effective assistance of counsel where trial counsel failed to object to the solicitor's closing argument when the solicitor denied Petitioner a fair trial by directly commenting on Petitioner's constitutional right to remain silent?

(Doc. 22-8 at 2).  The State filed a return to petition for writ of certiorari on November 8, 2012.  On  July 23, 2014, the South Carolina Court of Appeals filed an order denying certiorari.  The Remittitur was sent to the Anderson County Clerk of Court on August 8, 2014 (doc. 22-11).

---

[3]As pointed out in footnote 1, the copy of the order in the appendix contains extraneous, handwritten markings.  Therefore, the respondent has attached a clean copy of the order (doc. 22-6) to the return.

5

## FEDERAL PETITION

On September 24, 2014, the petitioner filed his § 2254 petition (doc. 1). On January 15, 2015, the respondent filed a motion for summary judgment (doc. 19). By order filed on January 16, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion (doc. 20). On February 23, 2015, the petitioner filed a response in opposition to the motion for summary judgment(doc. 24).

In his federal petition, the petitioner makes the following claims:

**GROUND ONE**: Ineffective assistance of counsel. Sixth Amendment constitutional violations.

**SUPPORTING FACTS**: "Failing object to the possession jury instruction to be preserved for appellate review in which the state failed to prove proof beyond a reasonable doubt of knowingly and unlawfully having in his possession 200 grams or more but less than 400 grams of cocaine in which the petitioner was indicted on." [*sic*]

**GROUND TWO**: Ineffective assistance of counsel.

**SUPPORTING FACTS**: "Failing to object to prosecutor misconduct in closing argument, prosecutor improperly commented on petitioner's exercising his constitutional right to remain silent."

**GROUND THREE**: Ineffective assistance of counsel.

**SUPPORTING FACTS**: "Failing to object to the Hand of one Hands of all [*sic*] jury charge which was outside the scope of the indictment."

**GROUND FOUR**: Ineffective assistance of counsel.

**SUPPORTING FACTS**: "Failing object to a trial in absentia when the [State] failed to produce evidence that the petitioner received notice of his term of court or trial date. Petitioner never waived his right not to appear at his trial."

(Doc. 1 at 6–11; doc. 1-1 at 1–2).

6

## APPLICABLE LAW AND ANALYSIS

### Summary Judgment Standard

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non–movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non–moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non–moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc's Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### *Exhaustion*

The respondent contends that Grounds One, Three, and Four, though technically exhausted, are procedurally defaulted (doc. 18 at 6–7). The respondent acknowledges that Ground Two is exhausted as it was presented to the state court of appeals in the petition for writ of certiorari (doc. 18 at 7).

### *Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he or she is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'" *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536

8

(2006)).  To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999).  "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent.  However, "actual innocence" requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012), the United States Supreme Court carved out a "narrow exception" that modified the "unqualified statement in *Coleman*, [501 U.S. at 754-55] that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default."  In *Martinez*, the Court

> read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318-19, 1320-21).  The Court in *Martinez* also noted:

> When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual

support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

132 S. Ct. at 1319.

***Merits***

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of

10

> legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257–58 (4th Cir. 1999).

### *Ineffective Assistance of Counsel*

To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

11

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

### Ground One

The petitioner first argues that counsel was ineffective because he did not "object to the possession jury instruction to be preserved for appellate review in which the state failed to prove proof beyond a reasonable doubt of knowingly and unlawfully having in his possession 200 grams or more but less than 400 grams of cocaine in which the petitioner was indicted on" (doc. 1-1 at 1).

The trial judge instructed the jury on principles of accomplice liability (app. 143–44). The judge also gave, in pertinent part, the following charge on the law of trafficking:

> Now, in this case each of the defendants have been charged with trafficking in cocaine.
>
> Now, the State must prove beyond a reasonable doubt that the defendant knowingly sold, manufactured, cultivated, delivered, purchased, or brought into the state; or, provided financial assistance, or, otherwise aided, abetted, attempted or conspired to sell, manufacture, cultivate, deliver, purchase, or bring into this state; or, was knowingly in actual or constructive possession, knowingly attempting to become in actual or constructive possession of cocaine.
>
> The State must also prove, by beyond a reasonable doubt that the amount of the cocaine in the possession of the defendant, or any mixture of containing cocaine, was 200 grams, or more, but less than 400 grams.

12

> Now, to prove possession, the State must prove beyond a reasonable doubt that the defendant had both the power and the intent to control the disposition or use of the cocaine. Possession can either be actual or constructive.
>
> Actual possession means that the cocaine was in the actual physical control of the defendant.
>
> Constructive possession means that the defendant had dominion or control over either the cocaine itself or the property on which the cocaine was found.
>
> Mere presence at the scene where drugs were found is not enough to prove possession. Actual knowledge of the presence of cocaine is strong evidence of the defendant's intent to control its disposition or use. The defendant's knowledge and possession may be inferred when a substance is found on the property under a defendant's control. However, this inference is simply an evidentiary fact to be taken into consideration by you, along with the other evidence in the case, and to be given the weight that you think it should have.

(App. 144–45).

The petitioner raised this claim in his PCR case, but it was not raised in the PCR appeal. Accordingly, it is procedurally defaulted absent a showing of cause and prejudice or actual innocence. To the extent that the petitioner would rely on a claim of ineffective assistance of PCR appellate counsel, this cannot be a basis to avoid the default. *Coleman v. Thompson*, 501 U.S. 722, 757 (1991) ("Because Coleman had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of Coleman's claims in state court cannot constitute cause to excuse the default in federal habeas."); *see also Martinez*, 132 S.Ct. 1309, 1319–20 ("*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial. . . . The rule of *Coleman* governs in all but the limited circumstances recognized here."). Likewise, he cannot prove prejudice from the default because this claim lacks merit under *Strickland*, 466 U.S. 668.

13

At the PCR hearing, the petitioner testified that his attorney was ineffective for failing to object to the possession charge given to the jury "because there was never no drugs found on me" (app. 204–06). The petitioner conceded that the State's evidence was that he was in a car with another person that was pulled over by law enforcement. He was a passenger in the front seat, and it was alleged that someone in the car had thrown out a packet of a substance that when tested, was determined to be between 200 and 400 grams of cocaine. The petitioner's position was that he was merely present in the car "[a]nd due to the fact that I have no interest in the business of where it was found that I'm not in constructive possession." Therefore, he contended that trial counsel should have objected to the trial court's instruction that "the defendant's knowledge and possession may be inferred when a substance is found on the property under a defendant's control" (app. 205–07, 216–17).

Trial counsel, Mr. Griffin, also testified at the PCR hearing. He stated that the petitioner would not cooperate with pretrial preparation and counsel could not locate the petitioner even with the help of a private investigator. The petitioner failed to attend his trial, although he had notice to be present (app. 217–20). When asked about not objecting to the jury instruction at issue, counsel testified that he did not see a ground upon which to object. He explained that "[t]he contraband came out of the passenger side, and that's where [the petitioner] was sitting. So that's circumstantial evidence that he had actual possession of the drugs. There was no evidence to justify [an objection]" (app. 220). With regard to the petitioner's contention that the charge was not supported by the indictment, counsel testified, "I think that the statute provides for all that, actual and constructive [possession]." Also, the trial judge had charged the elements of the statute and the statute includes both actual and constructive possession. Further, counsel felt that the charge on mere presence "offset" the charge on constructive possession and that there was no reason to object (app. 220–21).

14

The PCR court rejected the petitioner's allegation:

> As to Applicant's allegation that trial counsel was ineffective for failing to object to the "possession" jury instruction to be preserved for appellate review in which the state failed to prove beyond a reasonable doubt of knowingly and unlawfully have in his possession 200 grams or more but less than 400 grams of cocaine on which the Applicant was indicted, this Court finds this allegation is without merit. Counsel testified that he had experience trying drug cases prior to Applicant's case and that counsel was familiar with legal issues involved with drug cases. Counsel testified that he did not find any grounds on which to base an objection to the court's "possession" charge. This Court finds that the Applicant has failed to provide a basis on which counsel should have made an objection to the possession charge.

(App. 235–36).

The petitioner cannot show either deficient performance or prejudice from counsel's failure to object. The petitioner must show by clear and convincing evidence that the PCR court's credibility determinations with respect to petitioner's trial counsel were incorrect, *Wilson v. Ozmint*, 352 F.3d 847, 858–59 (4th Cir. 2003), and that these incorrect credibility determinations resulted in an improper adjudication by the PCR court. 28 U.S.C. § 2254(d)(2). A petitioner has the burden of showing that trial counsel's performance was deficient and must overcome the strong presumption that a trial counsel's conduct falls within the broad range of reasonable professional assistance. *Strickland*, 466 U.S. at 687–89. Moreover, "it is clear that the state PCR court's decision was not 'based on' any error that inheres in this finding." *Wilson v. Ozmint*, 352 F.3d at 859, which cites 28 U.S.C. § 2254(d)(2) (stating that the state court's decision must be "based on an unreasonable determination of the facts"); *see also Williams v. Taylor*, 529 U.S. 362, 410 (2000); and *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted).

15

"The law to be charged must be determined from the evidence presented at trial." *State v. Rivera*, 699 S.E.2d 157, 159 (S.C. 2010). South Carolina Code § 44-53-370(e)(2) provides:

> Any person who knowingly sells, manufactures, cultivates, delivers, purchases, or brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, or conspires to sell, manufacture, cultivate, deliver, purchase, or bring into this State, or who is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive possession of … ten grams or more of cocaine or any mixtures containing cocaine, as provided in Section 44-53-210(b)(4), is guilty of a felony which is known as "trafficking in cocaine" . . . .

S.C. Code Ann. § 44-53-370(e)(2). Both § 44-53-370(e)(2) and South Carolina case law are clear: a defendant may be convicted if he is either in actual or constructive possession of the drug in question. "Where contraband materials are found on premises under the control of the accused, this fact in and of itself gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury." *State v. Muhammed*, 524 S.E.2d 637, 639 (S.C. Ct. App. 1999) (internal quotation marks and citation omitted). "Possession requires more than mere presence." *State v. Jackson*, 717 S.E.2d 609, 611–12 (S.C. Ct. App. 2011) (internal quotation marks and citation omitted). "In drug cases, the element of knowledge is seldom established through direct evidence, but may be proven circumstantially." *Id*. at 612 (internal quotation marks and citation omitted). "Knowledge can be proven by the evidence of acts, declarations, or conduct of the accused from which the inference may be drawn that the accused knew of the existence of the prohibited substances." *Id*. (internal quotation marks and citation omitted). *See also, e.g., State v. Ballenger*, 470 S.E.2d 851, 854 (S.C. 1996) (constructive possession of drugs occurs when the person charged with possession has dominion and control over either drugs or the premises upon which the drugs are found); *State v. Hudson*, 284 S.E.2d 773, 775 (S.C. 1981) ("Where contraband materials are found on premises under the control of

16

the accused, this fact in and of itself gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury."); *id*. ("Constructive possession can be established by circumstantial evidence as well as direct evidence, and possession may be shared."); *id*. (noting that both defendants "shared control of the premises" and holding there was "sufficient evidence from which a reasonable trier of fact could conclude beyond a reasonable doubt" that one of the defendants, though he was away from the premises when the drugs were found and was arrested three hours later while driving on the interstate, "constructively possessed heroin with intent to distribute").

As the petitioner's trial counsel correctly observed (app. 220-21), a reasonable inference from the State's evidence (including the testimony of Sgt. Baxter and Officers Brock and Scoggins) is that the petitioner was the person who threw the cocaine out of the car window while Hall attempted to avoid arrest by driving the car recklessly and at a high rate of speed because Hall was too involved in driving his vehicle to have thrown the cocaine across his seated passenger, the petitioner, and out of the window. The petitioner was unquestionably seated in the passenger seat, and he fled from that side of the vehicle when the car finally stopped.

Furthermore, as argued by the respondent, the petitioner's argument that the instruction was not proper because he did not have constructive possession of the business where the cocaine was ultimately found is spurious (*see* doc. 24 at 6). The charge was given, not because he had constructive possession of the trucking business, but because he had actual or constructive possession of the interior of the car. An inference of his right to dominion and control is especially strong over the contents on the passenger's side of the car, from which the cocaine was thrown out of the fleeing Buick.

This claim is procedurally defaulted because it was not raised in the appeal of the PCR case. Since the petitioner cannot prove either deficient performance or

prejudice to support his ineffective assistance of counsel claim, the procedural default cannot be excused.

### Ground Two

In ground two of his petition, the petitioner maintains that trial counsel was ineffective because he did not object to the closing argument of the Assistant Solicitor. Specifically, he asserts that the Assistant Solicitor's closing argument denied him a fair trial by directly commenting on the petitioner's constitutional right to remain silent (doc. 1-1 at 1). This ground was raised in the PCR application, ruled on by the PCR Judge, and raised in the appeal of the PCR case. Hence, it is exhausted and not defaulted.

In his response to the motion for summary judgment, the petitioner contends: (1) there is a reasonable probability that the jurors used the Assistant Solicitor's comments to "insinuate" that he was guilty because he exercised his constitutional right to remain silent (doc. 24 at 12); (2) in light of the "inconsistent" manner of trial counsel's strategy, this court should conclude that trial counsel's representation fell below an objective standard of reasonableness and infected the trial with "unfairness as to make the resulting conviction a denial of the Due Process Clause of the Fourteenth Amendment" as well as the Fifth Amendment and Sixth Amendment (*id*.); and (3) "the evidence of the petitioner['s guilt] was not overwhelming" (*id*.).

Trial counsel asserted in his opening statement that the petitioner was merely an innocent bystander who was unluckily caught in the middle of a narcotics sting operation against his co–defendant Hall (app. 40–41). During the State's case, however, Officer Baxter testified that he and three other officers saw the bag containing a substantial amount of cocaine being thrown out of the passenger side window of Hall's car during the chase. The petitioner was in the passenger seat, and the petitioner's presence in the passenger seat was corroborated by Officer Brock (app. 66, 71–74, 91–92). The arresting officer testified that once the officers had immobilized Hall's vehicle the petitioner exited the

passenger side and attempted to flee. The arresting officer testified further, without objection, that, after he arrested the petitioner, the petitioner did not ask any questions and that the petitioner did not say anything to him (app. 96–98).

The petitioner complains about the following comments made during the State's closing argument:

> Let's talk about Mr. Rice first on trafficking. Is he just an innocent bystander along for the ride? No. His actions speak louder than words. Did he know the stuff was there? Yes, he did. He's in the passenger's seat. As the officers testified, the dope came out of the passenger's side window. He is sitting there. It's not like he didn't know it was there. If he didn't know or wasn't involved in part of this, why didn't he just sit there in the seat when officers came there? No, he took off running. What does flight or running from something mean? He knew it was up. He doesn't want to get caught, because you know why? He's going to go to jail if he gets caught. He has knowledge that this item, this dope, this right here came out his window could put him in jail. If he's innocent, [as trial counsel] is going to claim, then why didn't he just sit there and say man, I didn't know [sic] have nothing to do with this. You heard me ask Officer Scroggins well, did he say anything after he handcuffed him or he stopped and arrested him? The answer was no. He said absolutely nothing. If you had been with someone and this much dope just came out of the passenger side window, don't you think you would have been hollering man, it wasn't me, I didn't do it. His actions speak louder than words. He's trying to run and get away just as much. He is a dope dealer just [as] much as Mr. Hall.

(App.123–24).

Trial counsel for the petitioner, in his closing argument, responded by arguing:

> Mr. Rice, he did not offer any opposition when the officer identified himself as a police officer. He didn't offer any resisting. Mr. Hall was the one who fought, ducked and dodged. Mr. Rice, [law enforcement] said he did not say anything. I mean, [law enforcement] didn't say they asked him any questions either. [Petitioner] has a right to remain silent. I mean, the police cars are coming after him everywhere. There [were] cars coming [from] everywhere. Mr. Hall had just taken him on the ride of a lifetime, around stopped school busses and everything else. When he gets out of the car he didn't have anything on him.

19

(App. 128).

At the PCR hearing, the petitioner testified that trial counsel was ineffective for failing to make a *Doyle* objection during the State's closing argument. *See Doyle v. Ohio*, 426 U.S. 610 (1976) (holding that the prosecution could not attempt to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining him about his failure to tell the story after receiving *Miranda* warnings); and *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The petitioner testified that trial counsel was ineffective in this matter because he had received *Miranda* warnings (app. 209). He also testified that there was no corroborating evidence to support his contention that he had received *Miranda* warnings during the course of his arrest. While the petitioner felt that trial counsel's error determined the outcome of his case, he admitted that the cocaine was thrown out of the passenger's side of the vehicle where he was sitting (app. 205–07, 214, 216–17).

Trial counsel testified that he had no basis to object to the State's closing reference to the petitioner's post-arrest silence because "[t]he law is unless there's evidence in the record that the defendant had been Mirandized, then it is not improper to comment on post-arrest silence" (app. 222). Trial counsel added:

> I mean, there was no evidence that he had been Mirandized. And he never met with me to tell [me that] he had been. I mean, I was kind of hamstrung throughout the whole trial. I really -- I didn't have his help in guiding me along as to what occurred during the --prior to that. If he had been here, maybe I would have known a little bit more to raise certain issues. But I didn't know that. He said he had been Mirandized, but that wasn't in the record. . . . . I can't presume he had been Mirandized. I think the law is you can't presume they're Mirandized either. He's entitled to a fair trial, not a perfect trial.

(App. 222–23).

The PCR court denied the petitioner's ineffective assistance claim, finding that the petitioner had failed to meet his burden of proving that trial counsel was ineffective for not objecting to the State's purported *Doyle* violation in closing argument. The PCR court

20

further found no evidence that the petitioner was prejudiced by counsel's failure to object (app. 237–39). The PCR court concluded:

> In *Doyle v. Ohio*, 426 U.S. 610 (1976), the Supreme Court ruled the prosecution could not attempt to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining him about his failure to tell the story after receiving Miranda warnings. However, the Court also reasoned that this prohibition did not apply in situations where the defendant's post-arrest silence was not the result of *Miranda* warnings. *Id.* The Constitution does not prohibit the use for impeachment purposes a defendant's silence prior to arrest, or after arrest if no *Miranda* warnings were given. Such silence is probative and does not rest on any implied assurance by law enforcement authorities that it will carry no penalty. *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Counsel testified that he did not object because there was no evidence in the record demonstrating that the Applicant had been [M]irandized and that counsel did not have grounds on which to base an objection. This Court finds that the solicitor's dosing arguments must be viewed in the context of the entire record. *McLaughlin v. State*, 352 S.C. 476, 575 S.E.2d 841 (2003). While the State's closing arguments must be confined to evidence in the record and the reasonable inferences that may be drawn from the evidence, *State v. Copeland*, 321 S.C. 318, 468 S.E.2d 620 (1996)[,] to be entitled to a new trial for improper closing arguments Applicant must show "the Solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Hamilton*, 344 S.C. 344, 362, 543 S.E.2d 586, 596 (2001)[.]
>
> After reviewing the entire record, this Court does not find that any comments by the solicitor so infected the trial that a new trial is warranted. This Court is not convinced that the solicitor's comments even reach the level of being improper, but certainly there is no evidence that Applicant was prejudiced. Additionally, this Court does not find that Mr. Griffin was ineffective for failing to object. He provided [a] rational explanation as to why he did not object and this Court accepts Mr. Griffin's reasoning as to why he did not object. Therefore, this allegation is denied and dismissed.

(App. 238–39). *See Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are

reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

An inmate's claims of prosecutorial misconduct are reviewed "to determine whether the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir. 2002) (internal quotation marks and citation omitted). To prevail on a claim of a prejudicial argument by a prosecutor, "the defendant must show that the prosecutor's remarks or conduct were improper and . . . that such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial." *Id.* (citation omitted). The PCR judge's findings that the petitioner had not made such a showing and that counsel's stated reason for not objecting, i.e., that he lacked a basis on which to object because the evidence before him was that the petitioner had not been Mirandized, are consistent with United States Supreme Court precedent and then existing precedent in South Carolina and the Fourth Circuit (*see* app. 237-38). At the time of the petitioner's trial, state appellate court decisions had held that there could be no *Doyle* violation from the State's impeachment of the defendant with his pre-*Miranda* silence because there was no evidence in the record the defendant ever received the *Miranda* warnings, *see Brown v. State*, 652 S.E.2d 765, 769–70 (S.C. Ct. App. 2007) (trial counsel was not ineffective in failing to object when there was no *Doyle* violation because there was no evidence in the record that the defendant ever received *Miranda* warnings), and that there is no presumption that a defendant receives *Miranda* warnings at the time of arrest. *State v. Bell*, 554 S.E.2d 435, 437 (S.C. Ct. App. 2001). *See also State v. McIntosh*, 595 S.E.2d 484 (S.C. 2004) (State could impeach defendant with silence prior to arrest or his silence after arrest but prior to the giving of the *Miranda* warnings).

As argued by the respondent, the PCR judge's rejection of the petitioner's claim is consistent with the plurality holding of the United States Supreme Court in *Salinas v. Texas*, 133 S. Ct. 2174 (2013). In *Salinas*, the Court "granted certiorari . . . to resolve a division of authority in the lower courts over whether the prosecution may use a defendant's

22

assertion of the privilege against self-incrimination during a noncustodial police interview

as part of its case in chief." 133 S. Ct. at 2179.  However, the majority found that it was

unnecessary to reach that question "because petitioner did not invoke the privilege during

his interview." *Id*. The facts before the Court in *Salinas* were as follows:

> Without being placed in custody or receiving *Miranda* warnings, petitioner voluntarily answered the questions of a police officer who was investigating a murder. But petitioner balked when the officer asked whether a ballistics test would show that the shell casings found at the crime scene would match petitioner's shotgun. Petitioner was subsequently charged with murder, and at trial prosecutors argued that his reaction to the officer's question suggested that he was guilty.

*Id*. at 2177–78. A plurality of the Supreme Court held:

> Petitioner's Fifth Amendment claim fails because he did not
> expressly invoke the privilege against self-incrimination in response to the officer's question. It has long been settled that the privilege "generally is not self-executing" and that a witness who desires its protection " 'must claim it.' " *Minnesota v. Murphy*, 465 U.S. 420, 425, 427, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (quoting *United States v. Monia*, 317 U.S. 424, 427, 63 S.Ct. 409, 87 L.Ed. 376 (1943)). Although "no ritualistic formula is necessary in order to invoke the privilege," *Quinn v. United States*, 349 U.S. 155, 164, 75 S.Ct. 668, 99 L.Ed. 964 (1955), a witness does not do so by simply standing mute. Because petitioner was required to assert the privilege in order to benefit from it, the judgment of the Texas Court of Criminal Appeals rejecting petitioner's Fifth Amendment claim is affirmed.

*Id*. at 2178.

With regard to the petitioner's contention that the Assistant Solicitor

committed a *Doyle* violation, the plurality of the Court in *Salinas* rejected this precise

argument: "Petitioner is correct that due process prohibits prosecutors from pointing to the

fact that a defendant was silent after he heard *Miranda* warnings, *Doyle v. Ohio*, 426 U.S.

610, 617–618 (1976), but that rule does not apply where a suspect has not received the

warnings' implicit promise that any silence will not be used against him, *Jenkins v.

Anderson*, 447 U.S. 231 (1980)." *Salinas*, 133 S.Ct. at 2182 n.3. The plurality also

explained that "[o]ur cases establish that a defendant normally does not invoke the privilege

by remaining silent." *Id*. at 2181.

Based upon the foregoing, there was neither deficient performance nor prejudice under *Strickland* from counsel's failure to object to the Assistant Solicitor's remarks in closing, since those remarks did not deprive the petitioner of a fair trial. The state court's rejection of the petitioner's claim was not "contrary to" and did not involve an "unreasonable application of" clearly established United States Supreme Court precedent under § 2254(d)(1). Therefore, this claim of ineffective assistance of counsel fails.

### Ground Three

The petitioner's third claim is that counsel was ineffective for failing to object to the jury instruction on accomplice liability (doc. 1-1 at 1). During the petitioner's trial, the court instructed the jury on principles of accomplice liability (app. 143–44). The petitioner's attorney did not object to this instruction. Counsel for Hall objected to it, but his objection was overruled (app. 149–51).

The petitioner claimed in PCR that counsel was ineffective for failing to object to this instruction because it was outside the scope of the trafficking indictment. He added that "in order to give a hand[] of one [is the] hand[] of all charge, you have to show that me and my co-defendant conspired to do something or came together to a common design to do something together." The petitioner contended that the transcript did not reflect any joint action and, therefore, the instruction was improper. He felt that this was error by counsel (app. 209–11). In his response to the motion for summary judgment, the petitioner contends that "the evidence produced at trial did not support the hand of one is the hand of all jury instruction" (doc. 24 at 14).

As noted by the PCR court above, trial counsel had handled "a number of drug cases" prior to the petitioner's case, and he was familiar with the legal issues that are involved in drug cases (app. 220). Trial counsel did not see any reason to object to the charge on accomplice liability because the inference of the evidence showed that both the plaintiff and the driver has possession of the contraband:

> Q. With regard to the Court's charge to the jury on the hand of one hand of all, did you find that charge objectionable?
>
> A. Not really, Like I said, the contraband came out of the passenger side window, and the other driver [*sic*] was operating the vehicle. And also, basically I think the law in South Carolina is if it's a large quantity of contraband, then basically the inference is both have possession of it. He didn't charge that.
>
> Q. Did you think that the hand of one hand of all charge was outside the scope of the indictment?
>
> A. No really, no.
>
> Q. And looking back now, do you still maintain that position?
>
> A. Sure, yeah.

(App. 221–22).

The PCR court, in its written decision, rejected the petitioner's claim, and found as follows:

> This Court further finds that Applicant's allegation that counsel was ineffective for failing to object to the "hand of one hand of all" jury charge because the charge was outside the scope of the indictment is without merit. Counsel testified that based on his review of the charge and his experience with drug cases there were not any grounds on which to base an objection to the "hand of one hand of all" charge. The record reflects that Applicant's co-defendant's attorney objected to the charge, however this objection was overruled. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. *Whitehead v. State*, 308 S.C. 119, 417 S.E.2d 530 (1992). *See also Dempsey v. State*, 363 S.C. 365. 610 S.E.2d 812 (2005) and *McLaughlin v. State*, 352 S.C. 476, 575 S.E.2d 841 (2003). This Court finds that counsel articulated valid strategic reasons for not objecting to the court's charge on "possession" and "hand of one hand of all." The Applicant has not shown that counsel was deficient in that choice of tactics and any resulting prejudice. Therefore,

25

this Court finds that these allegations are denied and dismissed.

(App. 236).

This allegation was raised and ruled upon in the PCR action, but it was not raised in the PCR appeal, so it is procedurally defaulted absent a showing of cause and prejudice or actual innocence.  To the extent that the petitioner would rely on a claim of ineffective assistance of PCR appellate counsel, this cannot be a basis to avoid the default. *Coleman*, 501 U.S. at 757 ("Because Coleman had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of Coleman's claims in state court cannot constitute cause to excuse the default in federal habeas."); *see also Martinez*, 132 S.Ct. 1309, 1319–20 ("*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial. . . . The rule of *Coleman* governs in all but the limited circumstances recognized here.").

In any event, the PCR court's credibility determination is a factual determination entitled to deference by this court. *Cagle v. Branker,* 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) ("for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear); and *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them")).  The petitioner may overcome this presumption of correctness only by showing clear and convincing evidence to the contrary. *Wilson v. Ozmint,* 352 F.3d 847, 858–59 (4th Cir. 2003) (quoting *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003)).  The petitioner has made no such showing here.

"It is well-settled that a defendant may be convicted on a theory of accomplice liability pursuant to an indictment charging him only with the principal offense." *State v.*

26

*Dickman*, 534 S.E.2d 268, 269 (S.C. 2000) (citations omitted). "Accordingly, the State may present an indictment charging a defendant as a principal based on information of aiding and abetting the crime charged." *State v. Batchelor*, 661 S.E.2d 58, 60 (S.C. 2008). For instance, in *State v. Batchelor*, the court held, "Felony DUI is subject to accomplice liability based on a factual scenario that includes evidence of aiding and abetting as in this case. As noted above, an accomplice may be indicted as a principal. There is no material variance in proof when the indictment charges the defendant as a principal and the evidence at trial proves he was guilty as an accomplice." *Id.* Also, in *State v. Thompson*, the court held:

> "Under the 'hand of one is the hand of all' theory [of accomplice liability], one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design and purpose." *State v. Condrey*, 349 S.C. 184, 194, 562 S.E.2d 320, 324 (Ct.App.2002). "A defendant may be convicted on a theory of accomplice liability pursuant to an indictment charging him only with the principal offense." *Id.* at 194, 562 S.E.2d at 325.

647 S.E.2d 702, 704-05 (S.C. Ct. App. 2007).

As argued by the respondent, the evidence presented at trial supported at least an inference that the petitioner and Hall were aiding and abetting each other in the offense of trafficking in cocaine. Further, South Carolina law did not require the State to allege accomplice liability in the indictment. Thus, there was no State law ground upon which counsel could have objected in good faith to the charge, and there is no prejudice under *Strickland* based on trial counsel's failure to raise this objection at trial. Accordingly, the petitioner has not shown cause and prejudice to excuse the procedural default of this claim.

***Ground Four***

In his final claim, the petitioner asserts that counsel was ineffective for "[f]ailing object to a trial in absentia when the [State] failed to produce evidence that the petitioner received notice of his term of court or trial date.  Petitioner never waived his right not to appear at his trial" (doc. 1-1 at 2).

At the PCR hearing, counsel for the State argued that this ground was not appropriate for PCR review because it had been addressed in the direct appeal (app. 196).  The petitioner's PCR counsel argued that "it goes to the ineffective assistance of counsel [ground] that Mr. Griffin didn't make appropriate efforts to notify [the petitioner] of the hearing dates and therefore was ineffective in that regard" (app. 197).  The PCR judge allowed the petitioner to present testimony on this issue (app. 197), and the PCR Judge addressed this matter in his written order (app. 236–37).

This claim was not raised in the PCR appeal, and therefore it is procedurally defaulted.  A claim of ineffective assistance of appellate counsel does not establish cause for the petitioner's default.  *Martinez*, 132 S.Ct. at 1319–20.  Furthermore, the petitioner cannot show prejudice from the default because his claim lacks merit under *Strickland*.

As a matter of South Carolina law, "[e]xcept in cases wherein capital punishment is a permissible sentence, a person indicted for misdemeanors and/or felonies may voluntarily waive his right to be present and may be tried in his absence upon a finding by the court that such person has received notice of his right to be present and that a warning was given that the trial would proceed in his absence upon a failure to attend the court."  *See* Rule 16, S.C.R.Crim.P.  "The deliberate absence of a defendant who knows that he stands accused in a criminal case and that his trial will begin during a specific period of time indicates nothing less than an intention to obstruct the orderly processes of justice." *Ellis v. State*, 227 S.E.2d 304, 306 (S.C. 1976).  In order to try a criminal defendant *in absentia*, the trial judge must make findings of fact on the record that the defendant:  (1)

28

received notice of his right to be present, and (2)  was warned he would be tried in his absence should he fail to attend. *State v. Jackson*, 341 S.E.2d 375, 375 (S.C. 1986).

Neither the petitioner nor Hall was present when their cases were called for a joint trial. The Assistant Solicitor introduced a certified copy of the petitioner's bond stating:

> Douglas Rice, the exact same thing.  He was put on a $25,000 surety, and he signed this on 11-23-05, also acknowledging that he failed to appear in court, that he would be tried in his absence.

> Furthermore, on Monday, December the 11th, Mr. Antran Hall and [Mr.] Douglas Rice [were] bond carded in.  I have a sheet that we have printed out from our office that shows that we bond card these individuals in.  I did call roll. Neither one of these … individuals showed up. I did issue a bench warrant on Mr. Rice.

> He has not responded to any -- to roll call, roll call bond cards from us. Mr. Griffin and I have spoken about getting this thing ready for trial, this case ready for trial.  I know he's attempted several times to contact him by mail.  He also has sent out a private investigator looking for him.  And he did relay this to me. And also I have seen an affidavit, I assume he's going to put it in evidence, regarding the private investigator's attempt to locate Mr. Rice.

> I did call both these individuals this morning in court approximately about nine o'clock.   Neither one of them answered.  One of the bailiffs did go down and called the name three times at the courthouse steps and neither one of them answered.  I don't see him in here.

(App. 26–28).

Additionally, trial counsel told the court that he had attempted many times to contact the petitioner via letter.  Counsel also hired a private investigator to locate the petitioner to no avail (app. 29).  Counsel introduced the private investigator's affidavit (court's ex. 4) and three letters that he had written to the petitioner at the address counsel had for him (court's ex. 5-7) (app. 30–31).  The Assistant Solicitor added that a bench

29

warrant had been issued for the petitioner (app. 26, 31).  Counsel for both defendants stipulated that the bailiff had called each defendant's name three times on the courthouse steps without response (app. 32).

The petitioner testified at the PCR hearing that he first learned that he had been tried in his absence "[a]fter I was picked up by bounty hunters."  He was then arrested and thereafter appeared for sentencing.  He explained that a surety bond had been set in his case, and he admitted that his bond required him to keep up with his court dates and know when he was supposed to go to court.  However, the petitioner stated that he did not learn that Mr. Griffin had been appointed to represent him until after he had been tried. There was a six-month delay between the day of his arrest and the trial (app. 198–99).  The petitioner admitted on cross-examination that at least one letter that counsel sent was not returned.  He also admitted that this letter notified him that Mr. Griffin was his attorney and asked him to contact Mr. Griffin.  He testified that he did not think that it mentioned a court date.  Also, "the surety bond … states that I will be tried in my absence if I didn't appear, but the surety bond doesn't state no terms of court or [any] dates in which I should … appear in court" (app. 215–16).  The petitioner also admitted that he had received a card notifying him of his first roll call date or his co-defendant told him about that date and he appeared.  He claimed that he was not informed at the first roll call that he had to come back at another date, and he did not have a lawyer at that point because his first attorney had a conflict of interest (app. 216).

Trial counsel testified that when he was appointed, he tried to contact the petitioner by sending him numerous letters, all of which were returned but one (app. 218). After counsel was notified that the petitioner's case was going to be called for trial, he wrote him another letter on November 20, 2006, notifying the petitioner that the case was scheduled for court the week of December 11, 2006.  He asked the petitioner to contact him as soon as possible.  Another letter was sent to the petitioner on November 21, 2006,

with the notice of trial on Monday, December 11, 2006, at 8:30 a.m. in the Anderson County

Courthouse.  The petitioner was asked again to contact his attorney (app. 218–19).

The PCR court, in its written order, rejected the petitioner's allegation finding:

As to Applicant's allegation that counsel was ineffective for failing to object to a trial *in absentia* when the court failed to produce evidence that the Applicant had been given notice of his trial dates and term of court at which he must appear, and that Applicant never waived his rights to attend his trial, this Court finds this allegation is without merit.  Counsel testified that he sent several notices to Applicant, one of which was not returned to counsel, and hired a private investigator to locate the Applicant.  Applicant admitted that the surety bond he signed provided information about when Applicant must appear in court.  Applicant admitted that he only appeared at one roll call and did nothing to inform himself of subsequent court dates.  Applicant admitted to receiving at least one letter from counsel.  Although the Sixth Amendment of the Constitution guarantees the right of an accused to be present at every stage of his trial, this right may be waived.  *State v. Bell*, 293 S.C. 391, 360 S.E.2d 706 (1987).

\* \* \*

However, a waiver of such an important right is permitted only in limited circumstances.  *City of Aiken v. Koontz*, 368 S.C. 542, 629 S.E.2d 686 (2006).  Therefore, before a defendant may be tried *in absentia*, the trial court must determine a defendant voluntarily waived his right to be present at trial, making findings of fact on the record that the defendant (1) received notice of his right to be present and (2) was warned that trial would proceed in his absence.  *Id*.  This Court finds and the record reflects that Applicant was afforded notice of his trial.  The trial court made the adequate findings fact that Applicant received notice of his right to be present and was warned that trial would proceed in his absence.  Applicant admitted that the surety bond he signed indicated such.  A bond form that provides notice that defendant can be tried *in absentia* may serve as the requisite notice. *Id.  See also State v. Fairey*, 374 S.C. 92; 646 S.E.2d 445 (Ct. App. 2007).  Additionally, counsel provided [a] rational explanation as to why he did not object to the Applicant being tried in his absence and this Court accepts Mr. Griffin's reasoning as to why he did not object.  This Court finds that Applicant has failed to show that

31

counsel's performance was deficient and any resulting prejudice.  Therefore, this allegation is denied and dismissed.

(App. 236–37; doc. 22-6 at 10–11).

While an accused has a constitutional right to be present in the courtroom at every stage of his or her trial, a defendant may waive that right. *See Diaz v. United States*, 223 U.S. 442, 452 (1912); *see also United States v. Hondo*, 366 F.3d 363, 365–66 (4ᵗʰ Cir. 2004) (prior state court conviction where defendant did not appear for trial in South Carolina Court of General Sessions after refusal to sign bail document may be properly counted against federal defendant for purposes of career offender enhancement under U.S. Sentencing Guidelines).[4]  This federal district court has upheld trials *in absentia* conducted by South Carolina Courts of General Sessions where the state bond apprised the defendant that he or she must appear at trial. *See*, *e.g.*, *Evans v. Warden BRCI*, Civil Action No. 3:10-cv-2569-JMC, 2013 WL 5670903, at *5 (D.S.C. Oct. 17, 2013) ("Petitioner has not presented any reason for the court to find it probable that the trial judge would have directed a verdict if confronted with a different argument from trial counsel.  Similarly, the petitioner has failed to demonstrate that the proceeding would have achieved a different result if he were present or if his trial counsel had objected to his being absent."). *Accord Smith v. Mann*, 173 F.3d 73, 76 (2ᵈ Cir. 1999) ("we hold that nothing in the Constitution prohibits a trial from being commenced in the defendant's absence so long as the defendant knowingly and voluntarily waives his right to be present"); *Kirk v. Dutton*, No. 94-5725, 1994 WL 561146, at *2  (6ᵗʰ Cir. Oct. 11, 1994) ("This court has recognized that a defendant who voluntarily chooses not to appear for trial waives his constitutional rights to be present during trial."); and *United States v. Mera*, 921 F.2d 18, 20 (2ᵈ Cir. 1990) ("Although the waiver of a constitutional right must be 'knowing' and 'voluntary', a

---

[4]  Unrelated portions of the decision in *Hondo* may be affected by the recent decision of the Supreme Court in *Johnson v. United States*, No. 13-7120, 2015 WL 2473450 (U.S. June 26, 2015).

32

defendant's intentional absence from criminal proceedings, when he is aware that he is the subject of such proceedings, may be tantamount to a voluntary waiver of his right to be present at trial.").

The Federal Rules of Criminal Procedure, which are cited by the petitioner in his response, do not allow trials *in absentia* for defendants not present at the beginning of a trial. *See Crosby v. United States*, 506 U.S. 255 (1993) (prior version of Fed. R. Crim. P. 43 precludes trial *in absentia* for defendant not present at the beginning of trial); and current version of Fed. R. Crim. P. 43. However, the Supreme Court in *Crosby* did not address whether a trial *in absentia* is also prohibited by the Constitution. *Id.* at 262. *Crosby* is not binding on state courts because it addresses the Federal Rules of Criminal Procedure in United States District Courts.

South Carolina case law and court rules provide that a bail or bond form provides a defendant the requisite notice that he or she must show up for trial and not "jump" bail. *See State v. Fairey*, 646 S.E.2d 445, 449 (S.C. Ct. App. 2007) (citing *City of Aiken v. Koontz*, 629 S.E.2d 686, 689–90 (S.C. 2006)); and Rule 16, S.C.R.Crim.P. ("Except in cases wherein capital punishment is a permissible sentence, a person indicted for misdemeanors and/or felonies may voluntarily waive his right to be present and may be tried in his absence upon a finding by the court that such person has received notice of his right to be present and that a warning was given that the trial would proceed in his absence upon a failure to attend the court.").

The petitioner does not appear to recognize that his criminal trial, which he failed to attend, was the "'main event,' so to speak, rather than a 'tryout on the road[.]" *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977) (federal habeas corpus action under pre-AEDPA version of 28 U.S.C. § 2254), superannuated on other grounds by *Coleman v. Thompson*, 501 U.S. 722 (1991); and *Eaton v. Angelone*, 139 F.3d 990, 995 (4th Cir. 1998) (citing *Wainwright v. Sykes*: "More fundamentally, we refuse to transform a federal habeas

33

proceeding into a second trial.  In this case an evidentiary hearing would be precisely that."); *cf. Coker v. Atkinson*, Civil Action No. 6:14-cv-1272-JMC-KFM, 2015 WL 1311408, at *7 (D.S.C. Mar. 20, 2015) (citing *Wainwright v. Sykes* with respect to prison disciplinary proceeding).

           In the present case, the PCR judge's factual findings are supported by the record.  Thus, they are presumptively correct, and the plaintiff has not rebutted the presumption that they are correct by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See Cagle*, 520 F.3d at 324  ("'federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them'").  In particular, the record supports the following findings:

> Counsel testified that he sent several notices to Applicant, one of which was not returned to counsel, and hired a private investigator to locate the Applicant.  Applicant admitted that the surety bond he signed provided information about when Applicant must appear in court.  Applicant admitted that he only appeared at one roll call and did nothing to inform himself of subsequent court dates.  Applicant admitted to receiving at least one letter from counsel.

(App. 236–37).  The respondent states that the PCR judge's finding that "[t]he trial court made the adequate findings [of] fact that Applicant received notice of his right to be present and was warned that trial would proceed in his absence" (app. 237) is not supported by the record as "the trial judge did not make any express findings on the record" (doc. 18 at 36, 46).  The undersigned disagrees.  After hearing the above evidence from the prosecutor and the trial attorney, the trial judge entered as court's exhibits documents showing that the petitioner was put on a $25,000 surety bond acknowledging that if he failed to appear in court he would be tried in his absence, that he did not show up when "bond carded" in by the Solicitor's Office, and that a bench warrant was issued (app. 26).  The trial court also admitted as court's exhibits the affidavit from the private investigator hired by trial counsel to try to find the petitioner and three letters that trial counsel wrote to the petitioner at the

34

address counsel had for him (app. 30–31).  On the record, the trial judge found as follows: "They were – the parties [the petitioner and Hall] – he has been given proper notification and notified the trial would proceed in his absence if he were not here" (app. 28–29). Accordingly, all of the PCR judge's factual findings are supported by the record.

The petitioner's PCR testimony reveals that the petitioner never responded to the first letter that counsel wrote him, even though he admittedly received this letter; and that all of the letters that counsel mailed to him were mailed to the correct address.  Also, other than attending his very first roll call, the petitioner did nothing to apprize himself of his court date, in spite of language on his surety bond directing him to do so.  The petitioner simply thought that he would be tried following his arrest on a bench warrant.  Hence, since the petitioner was notified by the bond document that he could be tried in his absence, the trial *in absentia* did not violate his Sixth Amendment and due process rights to be present. The petitioner has not shown that the PCR judge's ruling on the trial *in absentia* was contrary to or was an unreasonable application of any "clearly established Federal law, as determined by the Supreme Court of the United States."  *See* 28 U.S.C. § 2254(d). Moreover, the petitioner cannot show cause for the procedural default (failure to raise it in the appeal of the PCR case) of this ground.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 19) be granted.  It is also recommended that the district court deny a certificate of appealability.  The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

July 6, 2015
Greenville, South Carolina

35

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).